UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

## 25-CR-20500-GAYLES/SHAW-WILDER

CASE NO. _____

18 U.S.C. § 641

18 U.S.C. § 371

18 U.S.C. § 1001(a)(2)

18 U.S.C. § 1519

18 U.S.C. § 1956(h)

18 U.S.C. § 1957

26 U.S.C. § 7206(2)

52 U.S.C. § 30109(d)(1)(A)(i)

52 U.S.C. § 30122

18 U.S.C. § 981(a)(1)(C)

18 U.S.C. § 982(a)(1)

UNITED STATES OF AMERICA

vs.

SHEILA CHERFILUS-MCCORMICK,
EDWIN CHERFILUS,
NADEGE LEBLANC, and
DAVID KOFI SPENCER,

   Defendants.

_____/



FILED BY____BM____D.C.

Nov 19, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

### INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### Relevant Federal Election Campaign Act Provisions

1.      The Federal Election Campaign Act of 1971, as amended, Title 52, United States Code, Sections 30101, *et seq.* ("Election Act"), limited financial influence in the election of candidates for federal office, including for the United States Congress, and provided for public disclosure of the financing of federal election campaigns, as follows:

a.  The Election Act limited the amount and source of money that could be contributed to a federal candidate or that candidate's authorized campaign committee.

b.  A "straw donor" was a person who contributed to a campaign in his or her name despite receiving an advance payment or subsequent reimbursement of all or a part of that contribution from another source, thereby acting as an intermediary between the true source of the contribution and the candidate or campaign that received the contribution, which was prohibited under federal law.  The Election Act expressly stated that contributions made through an intermediary were treated as contributions from the original payor.

c.  In 2021, the Election Act prohibited both primary and general election campaign contributions in the name of intermediaries or straw donors to any candidate.  The Election Act also prohibited any candidate, political committee, or other person from knowingly accepting or receiving a contribution in the name of an intermediary or straw donor.

d.  In 2021, the Election Act limited both primary and general election campaign contributions by individuals to $2,900 from any individual to any one candidate.  The Election Act also prohibited any candidate, political committee, or other person from knowingly accepting or receiving a contribution in excess of these

2

limitations.

2.      The Federal Election Commission ("FEC") was an agency and department of the United States with jurisdiction to enforce the limits and prohibitions of the Election Act, and to compile and publicly report accurate information about the source and amounts of contributions.

3.      Pursuant to the Election Act, the FEC required campaign committees, including Sheila Cherfilus McCormick for Congress, Inc., to file periodic reports of receipts and disbursements identifying, among other things, each person who made a contribution to such committee during the relevant reporting period whose contribution or contributions had an aggregate amount or value in excess of $200 within the calendar year, together with the date and the amount of any such contribution.  In preparing these reports, federal candidates and political committees relied on the information provided by the donor, including the individual's name, address, and occupation.  These periodic reports, which were filed with the FEC and made publicly available, were intended to provide citizens with a transparent record of contributions to candidates for federal office.

**Relevant Federal Income Tax Provisions**

4.      The Internal Revenue Code, Title 26, United States Code, Sections 1, *et seq.* ("the Code") set forth tax laws of the United States.

5.      The Internal Revenue Service ("IRS") was an agency of the United States Department of Treasury responsible for enforcing and administering the tax laws of the United States of America and collecting taxes owed to the United States.

6.      The IRS Form 1040 was the standard form that individuals used to file their annual federal income tax returns.  This form contained sections that required taxpayers to disclose

their financial income and losses for the year in order to ascertain whether the taxpayer was due a tax refund or whether the taxpayer owed additional taxes.

7.      The IRS Schedule C was a form for individuals who operated their own business to complete and report profits or losses.  As a general matter, a loss on a Schedule C allowed a taxpayer to increase the amount of refund owed to the taxpayer or decrease the amount of taxes owed to the IRS.

8.      The Code permitted certain tax deductions that were incurred during the taxable year, including those associated with ordinary and necessary business expenses and contributions made to charity.

9.      The Code did not permit a deduction for any amount paid or incurred in connection with any political campaign, either on behalf of or in opposition to any candidate for public office, or in connection with attempting to influence the general public, or segments thereof, with respect to elections, legislative matters, or referenda.

10.     The Code did not permit a deduction for any amount paid or incurred in connection with personal expenses, such as jewelry purchases, clothing, and other expenses that were not related to the functions of a business or with the ordinary and necessary expenditures of a business.

11.     The IRS allowed individual taxpayers to file their tax returns electronically ("e-file") by filing online directly or through a tax preparation business.

## The Defendants and Relevant Individuals and Entities

### The Defendants

12.     Defendant **SHEILA CHERFILUS-MCCORMICK** was a politician and businesswoman in the Southern District of Florida.  **CHERFILUS-MCCORMICK** previously ran two unsuccessful congressional campaigns for the seat in Florida's 20th Congressional District

during the 2018 and 2020 federal election cycles.  In or around May 2021, **CHERFILUS-MCCORMICK** announced her candidacy in the 2022 special election for the 20th District after the death of the incumbent United States Representative.  On or about November 2, 2021, **CHERFILUS-MCCORMICK** won her party's special primary election for the 20th District seat and became the nominee for her party in the 2022 general election.  On or about January 11, 2022, **CHERFILUS-MCCORMICK** won the special general election, and she was sworn in as the United States Representative for Florida's 20th Congressional District on or about January 18, 2022.

13.     Defendant **EDWIN CHERFILUS**, a resident of the Southern District of Florida, was **SHEILA CHERFILUS-MCCORMICK's** brother.  From at least on or about May 20, 2021, through on or about January 11, 2022, **CHERFILUS** assisted in **CHERFILUS-MCCORMICK's** campaign for United States Representative in Florida's 20th Congressional District.

14.     Defendant **NADEGE LEBLANC**, a resident of the Southern District of Florida, was **SHEILA CHERFILUS-MCCORMICK's** Chief of Staff for the 20th District office. **LEBLANC** also assisted **CHERFILUS-MCCORMICK** with her campaigns.

15.     Defendant **DAVID KOFI SPENCER,** a resident of the Southern District of Florida, was at all times relevant to this Indictment a resident of the Middle District of Florida, a certified public accountant, and, from at least in or around 2020, was the owner of and chief accountant at D.K.S. Tax and Consulting, Inc.

**Relevant Individuals**

16.     Person 1 was a friend of **SHEILA CHERFILUS-MCCORMICK**, and a resident of the Middle District of Florida.

17.     Person 2 was a relative of **SHEILA CHERFILUS-MCCORMICK** and **EDWIN CHERFILUS**, and a resident of the District of Maryland.

18.     Person 3 was a relative of **SHEILA CHERFILUS-MCCORMICK** and **EDWIN CHERFILUS**, and a resident of the Southern District of Florida.

19.     Person 4 was a relative of **SHEILA CHERFILUS-MCCORMICK** and **EDWIN CHERFILUS**, and a resident of the Southern District of Florida.

20.     Straw Donor 1 was a relative of **NADEGE LEBLANC**, and a resident of the Southern District of New York.

21.     Straw Donor 2 was a relative of **NADEGE LEBLANC**, and a resident of the Southern District of Florida.

22.     Straw Donor 3 was a relative of **NADEGE LEBLANC**, and a resident of the Southern District of Florida.

23.     Straw Donor 4 was a friend of **NADEGE LEBLANC**, and a resident of the Southern District of Florida.

24.     Straw Donor 5 was a friend of **NADEGE LEBLANC**, and a resident of the Southern District of Florida.

## Relevant Entities

### Government Agencies Addressing the COVID-19 Pandemic

25.     On or about March 13, 2020, the President of the United States signed a national emergency declaration pronouncing the COVID-19 pandemic as a national disaster emergency.

26.     The Federal Emergency Management Agency ("FEMA") was an agency of the executive branch of the United States. FEMA coordinated the federal response to disasters that had received a Presidential disaster declaration through the Robert T. Stafford Disaster Relief and

Emergency Assistance Act (the "Stafford Act").  FEMA worked closely with officials in states to coordinate federal funds and other resources sent to states for disaster recovery.  The funds provided by FEMA to the states were funds appropriated by the Congress of the United States for use in emergency recovery and management and, therefore, were monies of the United States of America.  FEMA was the federal agency tasked with coordinating the federal response to the COVID-19 pandemic.

27.     The Florida Division of Emergency Management ("FDEM") was an agency of the executive branch of the State of Florida.  FDEM was the agency in the State of Florida responsible for the coordination of the State's response to disasters.  FDEM was also the agency in the State of Florida tasked with being the liaison to federal agencies, such as FEMA, during and after disasters.  FDEM was the state agency tasked with managing the federal response in Florida, in coordination with FEMA, to the COVID-19 pandemic.

### Other Relevant Entities

28.     Trinity Healthcare Services, LLC ("Trinity") was a Miramar, Florida-based healthcare company founded in 1994 and registered with the State of Florida in 2016.  Trinity was wholly owned by Person 3 and Person 4.  In or around 2021, **SHEILA CHERFILUS-MCCORMICK** and **EDWIN CHERFILUS** were employed by Trinity.  Starting from at least on or about March 4, 2021, **CHERFILUS-MCCORMICK** and **CHERFILUS**, through Trinity, entered into purchase orders with FDEM to provide nurses, clerical staff, and canvassers for the FDEM/FEMA vaccination sites.  Trinity was to be paid by FDEM with federal funds provided by FEMA for work Trinity did pursuant to these purchase orders.  Bank Account 1 was opened in or around March 2021 and was provided to FDEM as the Trinity corporate bank account to accept payments for work done on the purchase orders.

29.     SCM Consulting Group, LLC ("SCM Consulting") was a Miramar, Florida-based consulting company registered with the State of Florida on or about March 11, 2021 by **SHEILA CHERFILUS-MCCORMICK**, and dissolved on or about November 1, 2022.

30.     The EC Firm, LLC ("EC Firm") was a Miramar, Florida-based consulting company registered with the State of Florida on or about March 10, 2021 by **EDWIN CHERFILUS** and dissolved on or about September 27, 2024.

31.     D.K.S. Tax and Consulting, LLC ("DKS Tax") was a Clearwater, Florida-based tax preparation and accounting company.  It was registered on or about November 10, 2020.  It was wholly owned and managed by **DAVID KOFI SPENCER**.

32.     Sheila Cherfilus McCormick for Congress, Inc. ("SCM for Congress") was the principal federal campaign committee formed to receive campaign contributions for the election of **SHEILA CHERFILUS-MCCORMICK**. SCM for Congress was located in Miramar, Florida. The Statement of Organization ("Statement") for SCM for Congress filed with the FEC reflected the committee's creation date of April 25, 2018.  This Statement, originally filed April 27, 2018, listed **CHERFILUS-MCCORMICK** as the Candidate, Custodian of Records, and Designated Agent for SCM for Congress.  Person 1 was listed as the committee's treasurer.  SCM for Congress continued to list Person 1 as the committee's treasurer through the special general election in 2022.

33.     Between on or about April 6, 2021, and continuing at least through the special general election on or about January 11, 2022, **SHEILA CHERFILUS-MCCORMICK** conducted a campaign for the Office of United States Representative for Florida's 20th Congressional District, which was a congressional district located within the Southern District of Florida encompassing areas of Broward and Palm Beach Counties.  During this campaign, **CHERFILUS-MCCORMICK** and others solicited contributions to her campaign.  A primary

8

election was held on or about November 2, 2021, and **CHERFILUS-MCCORMICK** was elected as her party's nominee by five votes. The special general election was held on or about January 11, 2022, and **CHERFILUS-MCCORMICK** was elected as the United States Representative for the 20th District. On or about February 10, 2022, SCM for Congress reported to the FEC that it received approximately $134,719.87 from individual contributors and no contributions from corporations during the special election cycle.

34.     Church 1 was an independent Christian church located in Laurel, Maryland.

35.     Jewelry Company 1 was a jewelry design house headquartered in New York, New York.

36.     Management Company 1 was a Delaware-based company registered in 2016, whose managers were Person 3 and Person 4.

37.     Consulting Company 1 was an Orlando, Florida-based consulting company registered with the State of Florida in or around 2021 by Person 1 and dissolved in or around 2024. Consulting Company 1 was owned by Person 1, who was its registered agent and manager.

38.     Platform 1 was a nonprofit organization that provided an online platform to facilitate and process contributions made through the platform to political committees.

39.     Platform 2 was a digital payment network operated by a private financial services company owned by several large United States banks. Platform 2 enabled the user to electronically transfer money from their bank account to another registered bank account without incurring fees. Platform 2 could be used through a mobile device or the website of a participating financial institution.

40.     Bank 1 was a financial institution headquartered in Charlotte, North Carolina, with locations throughout the United States, including the State of Florida, whose accounts were federally insured by the Federal Deposit Insurance Corporation ("FDIC").

41.     Bank 2 was a financial institution headquartered in Charlotte, North Carolina, with locations throughout the United States, including the State of Florida, whose accounts were federally insured by the FDIC.

42.     Bank 3 was a financial institution headquartered in San Francisco, California, with locations throughout the United States, including the State of Florida, whose accounts were federally insured by the FDIC.

43.     Bank Account 1 was a bank account, ending in 3603, opened at Bank 1 in the name of Trinity, and located in the District of Maryland. **SHEILA CHERFILUS-MCORMICK** and **EDWIN CHERFILUS** were authorized signers for Bank Account 1.

44.     Bank Account 2 was a bank account, ending in 3689, opened at Bank 1 in the name of SCM Consulting, and located in the District of Maryland. **SHEILA CHERFILUS-MCORMICK** and **EDWIN CHERFILUS** were authorized signers for Bank Account 2.

45.     Bank Account 3 was a bank account, ending in 3425, opened at Bank 1 in the name of SCM for Congress, and located in the District of Maryland. **SHEILA CHERFILUS-MCORMICK** and **EDWIN CHERFILUS** were authorized signers for Bank Account 3.

46.     Bank Account 4 was a bank account, ending in 4090, opened at Bank 1 in the name of SCM for Congress Campaign Donations, and located in the District of Maryland. **SHEILA CHERFILUS-MCORMICK** and **EDWIN CHERFILUS** were authorized signers for Bank Account 4.

47.     Bank Account 5 was a bank account, ending in 3328, opened at Bank 1 in the name of EC Firm, and located in the District of Maryland.  **EDWIN CHERFILUS** was the authorized signer for Bank Account 5.

48.     Bank Account 6 was a money market account, ending in 5786, opened at Bank 1 in the name of **SHEILA CHERFILUS-MCCORMICK** and **EDWIN CHERFILUS**, and located in the Southern District of Florida.  **CHERFILUS-MCCORMICK** and **CHERFILUS** were the authorized signers for Bank Account 6.

49.     Bank Account 7 was a bank account, ending in 5863, opened at Bank 1 in the name of Consulting Company 1, and located in the Middle District of Florida.  The authorized signer for Bank Account 7 was Person 1.

50.     Bank Account 8 was a bank account, ending in 4499, opened at Bank 3 in the name of **NADEGE LEBLANC**, and located in the Southern District of Florida.  **LEBLANC** was the authorized signer for Bank Account 8.

51.     Bank Account 9 was a bank account, ending in 7117, opened at Bank 2 in the name of Management Company 1, and located in the Southern District of Florida.  Person 3 and Person 4 were the authorized signers for Bank Account 9.

## COUNT 1
### Conspiracy to Commit the Theft of Government Funds
### (18 U.S.C. § 371)

1.     Paragraphs 12 to 14, 16, 18 to 19, 25 to 30, 32 to 33, 36 to 37, 40 to 44, 47, and 49 to 51 of the General Allegations of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.     From on or about July 1, 2021, through on or about August 18, 2021, in the Southern District of Florida, and elsewhere, the defendants,

**SHEILA CHERFILUS-MCCORMICK and**
**EDWIN CHERFILUS,**

did knowingly and willfully combine, conspire, confederate, and agree with each other and with

other persons known and unknown to the Grand Jury to commit an offense against the United

States, that is, to knowingly and willfully embezzle, steal, purloin, and convert to their own use

money and a thing of value of the United States and of any department and agency thereof, that is,

FEMA, the aggregate value of which exceeded $1,000, that is, approximately $5,007,271.50 in

United States currency and coin, to which the defendants were not entitled, in violation of Title

18, United States Code, Section 641.

## PURPOSE OF THE CONSPIRACY

3.       It was the purpose of the conspiracy for the defendants and their co-conspirators to

unjustly enrich **SHEILA CHERFILUS-MCCORMICK, EDWIN CHERFILUS,** and others by

keeping and transferring funds that the conspirators knew were not owed to Trinity and that FDEM

had mistakenly transferred to Bank Account 1, to further transfer the stolen and converted funds

into other bank accounts controlled by **CHERFILUS-MCCORMICK, CHERFILUS,** and

others, and to use the stolen and converted funds for the personal benefit of the conspirators and

to fund **CHERFILUS-MCCORMICK's** campaign committee, SCM for Congress.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to

accomplish the purpose of the conspiracy included, among other things, the following:

4.       On or about July 1, 2021, the State of Florida deposited into Bank Account 1

$5,240,472.06 of Federal funds as payment for four invoices. **EDWIN CHERFILUS** submitted

one of the four invoices to FDEM on or about May 14, 2021 ("May 14, 2021 invoice") and

requested payment of approximately $50,578.50 for work done in Jacksonville, Florida pursuant

to Trinity's purchase order with FDEM. The July 1, 2021 payment included a payment of $5,057,850.00 for Trinity's May 14, 2021 invoice. This payment exceeded the amount requested on the May 14, 2021 invoice by $5,007,271.50 and was the result of a clerical error by FDEM.

5.      Starting upon Trinity's receipt of that overpayment on July 1, 2021, **SHEILA CHERFILUS-MCCORMICK** and **EDWIN CHERFILUS** retained the $5,007,271.50 that was mistakenly deposited into Bank Account 1, which they controlled, with the intent to keep the stolen funds and convert the funds for their own use and for the benefit of **CHERFILUS-MCCORMICK**, her election campaign committee, SCM for Congress, and others.

6.      **SHEILA CHERFILUS-MCCORMICK** and **EDWIN CHERFILUS** falsely and fraudulently converted the $5,007,271.50 in mistakenly overpaid Federal funds and caused the $5,007,271.50 to be withdrawn, through wire transfers and personal checks, into accounts controlled by **CHERFILUS-MCCORMICK**, **CHERFILUS**, and others.

7.      **SHEILA CHERFILUS-MCCORMICK** and **EDWIN CHERFILUS** intended to use, and did use, the stolen and converted $5,007,271.50 for their own personal use and benefit, and the use and benefit of others, and to fund **CHERFILUS-MCCORMICK's** federal campaign committee, SCM for Congress, when **CHERFILUS-MCCORMICK** was a candidate for United States Representative in the special elections in Florida's 20th Congressional District.

## <u>OVERT ACTS</u>

In furtherance of the conspiracy, and to accomplish the purpose thereof, at least one of the co-conspirators committed and caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, amongst others:

1.      On or about July 1, 2021, after the State of Florida mistakenly deposited into Bank Account 1 $5,240,472.06 of Federal funds for the payment of four invoices submitted by Trinity,

13

resulting in a $5,007,271.50 overpayment of funds for the May 14, 2021 invoice, **SHEILA CHERFILUS-MCCORMICK** sent **EDWIN CHERFILUS** a text message of a screenshot of Bank Account 1's account activity, depicting the deposit that included the $5,007,271.50 overpayment of funds.

2.      Starting from at least on or about July 1, 2021, **SHEILA CHERFILUS-MCCORMICK** and **EDWIN CHERFILUS** retained the $5,007,271.50 in mistakenly overpaid Federal funds and did not return them to the State of Florida.

3.      On or about August 11, 2021, **SHEILA CHERFILUS-MCCORMICK** and **EDWIN CHERFILUS** caused a deposit of approximately $2,400,936.96 into SCM Consulting's bank account, Bank Account 2, by a check drawn from Bank Account 1.

4.      On or about August 11, 2021, **SHEILA CHERFILUS-MCCORMICK** and **EDWIN CHERFILUS** caused a deposit of approximately $190,894.91 into EC Firm's bank account, Bank Account 5, by a check drawn from Bank Account 1.

5.      On or about August 12, 2021, **SHEILA CHERFILUS-MCCORMICK** and **EDWIN CHERFILUS** caused a transfer of approximately $1,249,333.68 from Bank Account 1 to Management Company 1's bank account, Bank Account 9.

6.      On or about August 16, 2021, **SHEILA CHERFILUS-MCCORMICK** and **EDWIN CHERFILUS** caused a transfer of approximately $830,708.93 from Bank Account 1 to Consulting Company 1's bank account, Bank Account 7.

7.      On or about August 18, 2021, **SHEILA CHERFILUS-MCCORMICK** and **EDWIN CHERFILUS** caused a deposit of approximately $334,757.78 into **NADEGE LEBLANC's** bank account, Bank Account 8, by a check drawn from Bank Account 1.

All in violation of Title 18, United States Code, Section 371.

14

## COUNT 2
### Theft of Government Funds
### (18 U.S.C. § 641)

1.        Paragraphs 12 to 14, 16, 18 to 19, 25 to 30, 32 to 33, 36 to 37, 40 to 44, 47, and 49 to 51 of the General Allegations of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.        From on or about August 11, 2021, through on or about August 18, 2021, in the Southern District of Florida, and elsewhere, the defendants,

**SHEILA CHERFILUS-MCCORMICK and**
**EDWIN CHERFILUS,**

did knowingly and willfully embezzle, steal, purloin, and convert to their own use money and a thing of value of the United States and of any department and agency thereof, that is, FEMA, the aggregate value of which exceeded $1,000, that is, $5,007,271.50, to which the defendants were not entitled, in violation of Title 18, United States Code, Sections 641 and 2.

## COUNT 3
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

1.        Paragraphs 12 to 13, 29, 32 to 33, 35, 40, 44 to 46, and 48 of the General Allegations of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.        From on or about August 19, 2021, and continuing through on or about October 8, 2021, in the Southern District of Florida, and elsewhere, the defendants,

**SHEILA CHERFILUS-MCCORMICK and**
**EDWIN CHERFILUS,**

did knowingly and voluntarily combine, conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury to commit an offense under Title 18, United States Code, Section 1957, that is, to knowingly engage in monetary transactions affecting

15

interstate commerce, by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, and knowing that the property involved in the monetary transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1957.

It is further alleged that the specified unlawful activity was the theft of government funds, in violation of Title 18, United States Code, Section 641.

All in violation of Title 18, United States Code, Section 1956(h).

### COUNTS 4-11
### Money Laundering
### (18 U.S.C. § 1957)

1.      Paragraphs 12 to 13, 29, 32 to 33, 35, 40, 44 to 46, and 48 of the General Allegations of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates set forth in each Count below, in the Southern District of Florida, and elsewhere, the defendants,

### SHEILA CHERFILUS-MCCORMICK and
### EDWIN CHERFILUS,

did knowingly engage in, and aid and abet, and cause others to engage in, and attempt to engage in, monetary transactions affecting interstate commerce, by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, and knowing that the property involved in the monetary transactions represented the proceeds of some form of unlawful activity, as more particularly described in each count below:

| Count | Approximate Date | Description of Transaction |
|---|---|---|
| 4 | August 31, 2021 | Transfer of approximately $1,000,000 from Bank Account 2 to Bank Account 6 in the Southern District of Florida for the benefit of **SHEILA CHERFILUS-MCCORMICK** and **EDWIN CHERFILUS**. |
| 5 | September 1, 2021 | Payment of approximately $109,000 by cashier's check from Bank Account 6 in the Southern District of Florida to Jewelry Company 1, in the Southern District of New York, for the purchase of a ring for the benefit of **SHEILA CHERFILUS-MCCORMICK**. |
| 6 | September 3, 2021 | Transfer of approximately $800,000 from Bank Account 2 to Bank Account 6 in the Southern District of Florida for the benefit of **SHEILA CHERFILUS-MCCORMICK** and **EDWIN CHERFILUS**. |
| 7 | September 15, 2021 | Transfer of approximately $100,000 from Bank Account 6 in the Southern District of Florida to Bank Account 3 for the benefit of SCM for Congress. |
| 8 | September 23, 2021 | Transfer of approximately $60,000 from Bank Account 6 in the Southern District of Florida to Bank Account 3 for the benefit of SCM for Congress. |
| 9 | September 27, 2021 | Transfer of approximately $40,000 from Bank Account 6 in the Southern District of Florida to Bank Account 3 for the benefit of SCM for Congress. |
| 10 | September 29, 2021 | Transfer of approximately $800,000 from Bank Account 6 in the Southern District of Florida to Bank Account 4 for the benefit of SCM for Congress Campaign Donations. |
| 11 | October 8, 2021 | Transfer of approximately $140,000 from Bank Account 6 in the Southern District of Florida to Bank Account 3 for the benefit of SCM for Congress. |

It is further alleged that the specified unlawful activity was the theft of government funds, in violation of Title 18, United States Code, Section 641.

In violation of Title 18, United States Code, Sections 1957 and 2.

## COUNT 12
### Conspiracy to Make and Receive Straw Donor Contributions
### (18 U.S.C. § 371)

1.       Paragraphs 1 to 3, 12, 14, 17, 20 to 24, 28, 32 to 33, 38 to 39, 40, and 43 of the General Allegations of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.       Beginning in or around June 2021, until in or around August 2021, in the Southern District of Florida, and elsewhere, the defendants,

### SHEILA CHERFILUS-MCCORMICK and
### NADEGE LEBLANC,

did knowingly and willfully combine, conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury to commit an offense against the United States, that is, to knowingly and willfully make contributions in the names of other persons who were not the true source of the contributions and caused contributions to be made in the names of other persons who were not the true source of the contributions, and willfully accepted those contributions, aggregating $25,000 or more during the 2021 calendar year, that is, contributions to SCM for Congress, in connection with a primary election held to select candidates for a United States Representative, in violation of Title 52, United States Code, Section 30122.

### PURPOSE OF THE CONSPIRACY

3.       The purpose of the conspiracy was to facilitate and cause unlawful and unreported straw donor contributions from Trinity, through straw donors, to the SCM for Congress campaign in order to disguise the fact that Trinity was the true source of the funds that **SHEILA**

**CHERFILUS-MCCORMICK** and **NADEGE LEBLANC** caused to be contributed to SCM for Congress.

<u>MANNER AND MEANS OF THE CONSPIRACY</u>

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following:

4.      In or around June 2021, **SHEILA CHERFILUS-MCCORMICK** began soliciting friends and family to contribute funds to SCM for Congress before the committee's report detailing contributions covering the period of April 1, 2021, through June 30, 2021, was due to be filed with the FEC.    To facilitate friends and family contributing money to SCM for Congress, **CHERFILUS-MCCORMICK** caused funds from Bank Account 1 to be provided to friends and family to contribute.

5.      On or about June 25, 2021, **SHEILA CHERFILUS-MCCORMICK**, through Bank Account 1, sent Person 2 approximately $50,000 via wire transfer, part of which Person 2 then withdrew in cash and gave to **NADEGE LEBLANC**.

6.      **NADEGE LEBLANC** then gave two payments of $2,900 to SCM for Congress via personal check.  SCM for Congress then falsely reported to the FEC that **LEBLANC** was the source of the contributions sent to SCM for Congress.

7.      Between on or about June 28, 2021, and on or about June 30, 2021, **NADEGE LEBLANC** contacted her friends and family members—Straw Donor 1, Straw Donor 2, Straw Donor 3, Straw Donor 4, and Straw Donor 5 (collectively, the "Straw Donors")—and asked them to make contributions, either online or by check, to SCM for Congress using money she would send to them. **LEBLANC** also sent the internet link to SCM for Congress's donation page on Platform 1 to facilitate some of the online contributions.

8.      Between on or about June 28, 2021, and on or about June 30, 2021, **NADEGE LEBLANC** sent the Straw Donors money from the funds given to her by Person 2 to cause the Straw Donors to contribute those funds to SCM for Congress.

9.      Between on or about June 28, 2021, and on or about June 30, 2021, the Straw Donors made contributions to SCM for Congress, either online or by check, in amounts that **NADEGE LEBLANC** supplied to them using the money sent by **SHEILA CHERFILUS-MCCORMICK** through Person 2.  SCM for Congress then falsely reported to the FEC that the Straw Donors were the sources of the contributions sent to SCM for Congress.

10.     On or about June 30, 2021, Person 2 made two contributions to SCM for Congress in the amounts of approximately $2,800 and $2,500.  SCM for Congress then falsely reported to the FEC that Person 2 was the source of the contributions sent to SCM for Congress.

11.     By causing **NADEGE LEBLANC**, Person 2, and the Straw Donors to fraudulently contribute money to SCM for Congress in their names, knowing those persons were not the true sources of the contributions, **SHEILA CHERFILUS-MCCORMICK** and **LEBLANC** hid the true source of the contributions to disguise the fact that Trinity was the true source of the funds contributed for **CHERFILUS-MCCORMICK'S** benefit in the 2021 special primary election.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish the purpose thereof, at least one of the co-conspirators committed and caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, amongst others:

1.      On or about June 25, 2021, **SHEILA CHERFILUS-MCCORMICK** sent a text message to Person 2 with a list of people, including Person 2, **NADEGE LEBLANC**, and Straw

Donor 1, with amounts listed next to each person's name. During the text message exchange, Person 2 sent a text message to **CHERFILUS-MCCORMICK** stating, "At the bank now."

2.      On or about June 25, 2021, **SHEILA CHERFILUS-MCCORMICK**, through Bank Account 1, sent approximately $50,000 to Person 2's bank account.

3.      On or about June 25, 2021, Person 2 withdrew approximately $30,000 in cash from her bank account.

4.      On or about June 25, 2021, **NADEGE LEBLANC** made two payments of approximately $2,900 to SCM for Congress via personal check using money provided by **SHEILA CHERFILUS-MCCORMICK** through Person 2. SCM for Congress then falsely reported to the FEC that **LEBLANC** was the source of the contributions sent to SCM for Congress.

5.      On or about June 28, 2021, Person 2 withdrew an additional approximately $6,000 in cash from her bank account.

6.      On or about June 28, 2021, **SHEILA CHERFILUS-MCCORMICK** requested Person 1 to contribute money to SCM for Congress via text. When Person 1 asked in the text chat what the maximum contribution was, **CHERFILUS-MCCORMICK** responded, "The max is 2 checks of 2900. That is why [Person 2] had to give money to Nadege [**NADEGE LEBLANC**] for her to make another donation."

7.      On or about June 29, 2021, Person 2 withdrew from her bank account in cash the remaining approximately $14,000 of the money sent by **SHEILA CHERFILUS-MCCORMICK** on or about June 25, 2021.

8.      On or about June 30, 2021, Person 2 gave approximately $2,800 and $2,500 via personal check and Platform 1, respectively, to SCM for Congress using money provided by

**SHEILA CHERFILUS-MCCORMICK**.  SCM for Congress then falsely reported to the FEC that Person 2 was the source of the contributions sent to SCM for Congress.

Straw Donor 1

9.      On or about June 30, 2021, a relative of **NADEGE LEBLANC** sent Straw Donor 1 a wire transfer of approximately $5,775 after Straw Donor 1 gave two personal checks for approximately for $2,900 to SCM for Congress on or about June 25, 2021, and on or about June 30, 2021. The wire transfer was originally for approximately $5,800 but a $25 bank fee was deducted from it before its receipt by Straw Donor 1. SCM for Congress then falsely reported to the FEC that Straw Donor 1 was the source of the contributions sent to SCM for Congress.

Straw Donor 2

10.     On or about June 29, 2021, after Straw Donor 2 gave approximately $500 to SCM for Congress via personal check, **NADEGE LEBLANC** sent Straw Donor 2 a transfer of approximately $500 via Platform 2. SCM for Congress then falsely reported to the FEC that Straw Donor 2 was the source of the contributions sent to SCM for Congress.

Straw Donor 3

11.     On or about June 30, 2021, **NADEGE LEBLANC** texted Straw Donor 3.  In her text, **LEBLANC** told Straw Donor 3, "I just sent you $500. Please donate to the campaign." **LEBLANC** then sent Straw Donor 3 a link to SCM for Congress's page on Platform 1 via text.

12.     On or about June 30, 2021, **NADEGE LEBLANC** sent Straw Donor 3 a transfer of approximately $500 via Platform 2, which caused Straw Donor 3 to give approximately $500 to SCM for Congress via SCM for Congress's page on Platform 1. SCM for Congress then falsely reported to the FEC that Straw Donor 3 was the source of the contributions sent to SCM for Congress.

Straw Donor 4

13.     At some time prior to on or about June 29, 2021, **NADEGE LEBLANC** had asked Straw Donor 4 to give money to SCM for Congress.

14.     After Straw Donor 4 agreed to give money to SCM for Congress, on or about June 29, 2021, **NADEGE LEBLANC** gave Straw Donor 4 approximately $5,800 in cash, which Straw Donor 4 deposited into her bank account and caused Straw Donor 4 to give two personal checks for approximately for $2,900 each to SCM for Congress on or about June 29, 2021, and on or about June 30, 2021. SCM for Congress then falsely reported to the FEC that Straw Donor 4 was the source of the contributions sent to SCM for Congress.

Straw Donor 5

15.     On or about June 25, 2021, **NADEGE LEBLANC** texted Straw Donor 5, "[Straw Donor 5], I need a favor. If I give you $5,800 in cash, can you write me two checks for $2,900?" Straw Donor 5 agreed to do so.

16.     After Straw Donor 5 gave two personal checks for approximately $2,900 each to SCM for Congress on or about June 29, 2021, **NADEGE LEBLANC** gave Straw Donor 5 approximately $5,800 in cash.  SCM for Congress then falsely reported to the FEC that Straw Donor 5 was the source of the contributions sent to SCM for Congress.

The June 29th and June 30th Text Messages

17.     On or about June 29, 2021, **NADEGE LEBLANC** sent via text message to **SHEILA CHERFILUS-MCCORMICK** a photograph of the personal check from Straw Donor 2 for approximately $500 to SCM for Congress made on or about June 29, 2021.

23

18. On or about June 29, 2021, **NADEGE LEBLANC** sent via text message to **SHEILA CHERFILUS-MCCORMICK** a photograph of the two personal checks from Straw Donor 5 for approximately $2,900 each to SCM for Congress made on or about June 29, 2021.

19. On or about June 29, 2021, **NADEGE LEBLANC** sent two text messages to **SHEILA CHEFILUS-MCCORMICK** that stated, "[Straw Donor 4] is dropping hers off tonight" and "And [Straw Donor 3] will have to pay online cause I have no way to get a check to her."

20. On or about June 30, 2021, **NADEGE LEBLANC** sent via text message to **SHEILA CHERFILUS-MCCORMICK** a photograph of the two personal checks from Straw Donor 4 for approximately $2,900 each to SCM for Congress made on or about June 29, 2021, and on or about June 30, 2021.

All in violation of Title 18, United States Code, Section 371.

## COUNT 13
### Making and Receiving Straw Donor Contributions
### (52 U.S.C. §§ 30122 and 30109(d)(1)(A)(i))

1. Paragraphs 1 to 3, 12, 14, 17, 20 to 24, 28, 32 to 33, 38 to 39, 40, and 43 of the General Allegations of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. Between in or around June 2021, and in or around August 2021, in the Southern District of Florida, and elsewhere, the defendants,

**SHEILA CHERFILUS-MCCORMICK and**
**NADEGE LEBLANC,**

did knowingly and willfully make contributions in the names of other persons who were not the true source of the contributions and cause contributions to be made in the names of other persons who were not the true sources of the contributions, and willfully accepted those contributions, aggregating $25,000 or more during the 2021 calendar year, that is, contributions to SCM for

Congress, in connection with a primary and a general election held to select candidates for a United States Representative, in violation of Title 52, United States Code, Sections 30122 and 30109(d)(1)(A)(i), and Title 18, United States Code, Section 2.

## COUNT 14
### Conspiracy to Make a False and Fraudulent Statement on a Tax Return
### (18 U.S.C. § 371)

1.      Paragraphs 4 to 12, 15, 29, 31, and 34 of the General Allegations of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From at least on or about March 9, 2022, through on or about August 21, 2023, in the Southern District of Florida, in the country of Barbados, and elsewhere, the defendants,

**SHEILA CHERFILUS-MCCORMICK and
DAVID KOFI SPENCER,**

did knowingly and willfully combine, conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury to commit an offense against the United States, that is, to willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the IRS, of a personal tax return, Form 1040, of **SHEILA CHERFILUS-MCCORMICK** for the calendar year 2021, which was false and fraudulent as to a material matter, in that Line 28 of Schedule C "Total Expenses" included $4,620,055 worth of business expenses associated with SCM Consulting, and Line 11 of Schedule A included $1,200,000 in charitable contributions by **CHERFILUS-MCCORMICK** in 2021, whereas, as the defendants then and there knew, in 2021, SCM Consulting did not have $4,620,055 of total qualifying business expenses, and **CHERFILUS-MCCORMICK** did not make $1,200,000 in charitable contributions, in violation of Title 26, United States Code, Section 7206(2).

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for the defendants and their co-conspirators to unjustly enrich **SHEILA CHERFILUS-MCCORMICK** by falsely representing her total taxable income for calendar 2021 in order to reduce the tax liability owed by **CHERFILUS-MCCORMICK** to the IRS for tax year 2021.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, amongst other things, the following:

4.      In or around March 2022, **SHEILA CHERFILUS-MCCORMICK** engaged **DAVID KOFI SPENCER** to be her tax preparer for her calendar year 2021 Form 1040 tax return.

5.      **SHEILA CHERFILUS-MCCORMICK** and **DAVID KOFI SPENCER** falsely reported inflated business expenses of SCM Consulting in 2021, by falsely characterizing personal expenses and political contributions as business expenses.

6.      **SHEILA CHERFILUS-MCCORMICK** and **DAVID KOFI SPENCER** falsely reported the total profit for SCM Consulting in 2021 by falsely inflating business expenses of SCM Consulting, thereby falsely and fraudulently reducing the tax liability of SCM Consulting in 2021.

7.      **SHEILA CHERFILUS-MCCORMICK** and **DAVID KOFI SPENCER** falsely reported the total income for **CHERFILUS-MCCORMICK** in 2021 by using the falsely reported profit for SCM Consulting to report a lower total income amount for **CHERFILUS-MCCORMICK** in 2021.

8.      **SHEILA CHERFILUS-MCCORMICK** and **DAVID KOFI SPENCER** falsely reported an inflated amount of charitable contributions by **CHERFILUS-MCCORMICK** in

2021, thereby increasing the amount of deductions and falsely and fraudulently reducing **CHERFILUS-MCCORMICK's** total taxable income for 2021.

9.     As a result of **SHEILA CHERFILUS-MCCORMICK** and **DAVID KOFI SPENCER** falsely reporting SCM Consulting's business expenses and profit in 2021, **CHERFILUS-MCCORMICK's** total income in 2021, and **CHERFILUS-MCCORMICK's** charitable contributions in 2021, **CHERFILUS-MCCORMICK** and **SPENCER** falsely and fraudulently underreported the amount of taxes due to the United States by **CHERFILUS-MCCORMICK** for calendar year 2021.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish the purpose thereof, at least one of the co-conspirators committed and caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, amongst others:

1.     From at least on or about March 9, 2022, through on or about August 21, 2023, **SHEILA CHERFILUS-MCCORMICK** and **DAVID KOFI SPENCER** corresponded regularly about **CHERFILUS-MCCORMICK's** 2021 tax return, including at least five occasions when **CHERFILUS-MCCORMICK** was in the Southern District of Florida.

2.     On or about March 18, 2022, at **DAVID KOFI SPENCER's** request, DKS Tax Employee 1 prepared a trial balance for **SHEILA CHERFILUS-MCCORMICK's** 2021 tax return (the "March 18th trial balance"). The March 18th trial balance included line items describing transfers from Bank Account 2 to Bank Account 3, Bank Account 5, and Bank Account 6, totaling more than approximately $4,000,000. The March 18th trial balance identified these transfers as "Owner's Distributions," "Campaign," "EC Firm," and "Sheila Personal." **SPENCER** requested DKS Tax Employee 1 to send him a copy of the March 18th trial balance.

3.      On or about April 11, 2022, at **DAVID KOFI SPENCER's** direction, DKS Tax Employee 2 prepared a second trial balance for **SHEILA CHERFILUS-MCCORMICK's** 2021 tax return.  **SPENCER** directed DKS Tax Employee 2 to include line items describing expenses for "Consulting" and "Contractors" totaling more than $4,000,000, which did not appear in the March 18th trial balance.

4.      On or about July 7, 2023, **SHEILA CHERFILUS-MCCORMICK** electronically signed IRS Form 8879, acknowledging, under the penalty of perjury, that she had examined a copy of her income tax return and that everything contained within her 2021 Form 1040 tax return was true, correct, and complete.

5.      On or about August 21, 2023, **DAVID KOFI SPENCER** submitted a tax return on behalf of **SHEILA CHERFILUS-MCCORMICK** which falsely claimed SCM Consulting had a business-related expense of approximately $4,088,574 in consulting fees in 2021.

6.      On or about August 21, 2023, **DAVID KOFI SPENCER** submitted a tax return on behalf of **SHEILA CHERFILUS-MCCORMICK** which falsely claimed SCM Consulting had a business-related expense of approximately $295,529 in contract labor in 2021.

7.      On or about August 21, 2023, **DAVID KOFI SPENCER** submitted a tax return on behalf of **SHEILA CHERFILUS-MCCORMICK** which falsely claimed SCM Consulting had a business-related expense of approximately $155,000 in depreciation expense in 2021.

8.      On or about August 21, 2023, **DAVID KOFI SPENCER** submitted a tax return on behalf of **SHEILA CHERFILUS-MCCORMICK** which falsely claimed SCM Consulting had approximately $4,620,055 in total business-related expenses in 2021.

9.      On or about August 21, 2023, **DAVID KOFI SPENCER** submitted a tax return on

behalf of **SHEILA CHERFILUS-MCCORMICK** which falsely claimed SCM Consulting had a total net profit of approximately $1,779,882 in 2021.

10.     On or about August 21, 2023, **DAVID KOFI SPENCER** submitted a tax return on behalf of **SHEILA CHERFILUS-MCCORMICK** which falsely claimed **CHERFILUS-MCCORMICK** had approximately $2,169,607 in "other income" in 2021.

11.     On or about August 21, 2023, **DAVID KOFI SPENCER** submitted a tax return on behalf of **SHEILA CHERFILUS-MCCORMICK** which falsely claimed **CHERFILUS-MCCORMICK** made a total of approximately $1,200,000 in charitable contributions in 2021.

12.     On or about August 21, 2023, **DAVID KOFI SPENCER** submitted a tax return on behalf of **SHEILA CHERFILUS-MCCORMICK** which falsely claimed **CHERFILUS-MCCORMICK** had a total of approximately $1,054,079 in taxable income in 2021.

13.     On or about August 21, 2023, **DAVID KOFI SPENCER** submitted a tax return on behalf of **SHEILA CHERFILUS-MCCORMICK** which falsely claimed **CHERFILUS-MCCORMICK** had a total of approximately $432,495 in tax owing in 2021.

14.     On or about August 21, 2023, **DAVID KOFI SPENCER** submitted **SHEILA CHERFILUS-MCCORMICK's** Form 1040 tax return electronically with the IRS from the country of Barbados.

All in violation of Title 18, United States Code, Section 371.

### COUNT 15
### Aiding and Assisting a False and Fraudulent Statement on a Tax Return
### (26 U.S.C. § 7206(2))

1.     Paragraphs 4 to 12, 15, 29, 31, and 34 of the General Allegations of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.    From at least on or about March 9, 2022, through on or about August 21, 2023, in the Southern District of Florida, in the country of Barbados, and elsewhere, the defendants,

**SHEILA CHERFILUS-MCCORMICK and
DAVID KOFI SPENCER,**

did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the IRS, of a personal tax return, Form 1040, of **SHEILA CHERFILUS-MCCORMICK** for the calendar year 2021, which was false and fraudulent as to a material matter, in that Line 28 of Schedule C "Total Expenses" included $4,620,055 worth of business expenses associated with SCM Consulting, and Line 11 of Schedule A included $1,200,000 in charitable contributions by **CHERFILUS-MCCORMICK** in 2021, whereas, as the defendants then and there knew, in 2021, SCM Consulting did not have $4,620,055 of total qualifying business expenses, and **CHERFILUS-MCCORMICK** did not make $1,200,000 in charitable contributions, in violation of Title 26, United States Code, Section 7206(2) and Title 18, United States Code, Section 2.

## COUNT 16
### Making a False Statement to a Federal Agency
### (18 U.S.C. § 1001(a)(2))

1.    Paragraphs 4 to 12, 15, 29, 31, and 34 of the General Allegations of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.    On or about January 27, 2024, in the Southern District of Florida, and elsewhere, in a matter within the jurisdiction of the Internal Revenue Service ("IRS"), which is an agency of the executive branch of the United States, the defendant,

**DAVID KOFI SPENCER,**

did knowingly and willfully make materially false, fictitious, and fraudulent statement and representation during interviews by Special Agents of the IRS about the investigation of the

conspiracy described in Count 14, specifically pertaining to the accuracy of statements contained in the 2021 Form 1040 tax return for **SHEILA CHERFILUS-MCCORMICK**, that is, **DAVID KOFI SPENCER** represented to the IRS that the records he provided in response to a federal grand jury subpoena issued as part of the above-referenced investigation were accurate, when in truth and in fact, as the defendant then and well knew, the records he provided in response to a federal grand jury subpoena issued as part of the above-referenced investigation were not accurate, in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

**COUNT 17**
**Concealment and Falsification of a Record or Document**
**(18 U.S.C. § 1519)**

1.      Paragraphs 4 to 12, 15, 31, and 34 of the General Allegations of this Indictment are re-alleged and incorporated by reference as though fully set herein.

2.      Between on or about January 19, 2024, and on or about January 27, 2024, in the Middle District of Florida, in the Southern District of Florida, and elsewhere, the defendant,

**DAVID KOFI SPENCER,**

did knowingly conceal, cover up, falsify, and make false entries in a record and document, and cause others to do so, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the IRS, and in relation to and contemplation of such matter, that is, after being served with a subpoena issued by a federal grand jury sitting in the Southern District of Florida, **SPENCER** copied and altered a tax letter from Church 1 to falsely inflate the amount of charitable contributions made by **SHEILA CHERFILUS-MCCORMICK** in 2021; deleted and concealed the original tax letter from Church 1; and provided the altered Church 1 tax letter to the IRS in response to said federal grand jury subpoena, in violation of Title 18, United States Code, Sections 1519 and 2.

31

## FORFEITURE ALLEGATIONS

1.      The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, **SHEILA CHERFILUS-MCCORMICK** and **EDWIN CHERFILUS**, have an interest.

2.      Upon conviction of a violation of, or conspiracy to violate, Title 18, United States Code, Section 641, as alleged in this Indictment, the defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3.      Upon conviction of a violation of Title 18, United States Code, Sections 1956(h) and 1957, as alleged in this Indictment, the defendants shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

4.      The property directly subject to forfeiture as a result of the alleged offenses includes, but is not limited to, the following:

> (i)     a forfeiture money judgment in the sum of $5,007,271.50 in United States currency, which sum represents the value of any property involved in the defendants' commission of the offenses, or any property traceable to such property; and

> (ii)    Approximately 3.14 carat "Fancy Vivid Yellow Diamond" ring, purchased from Jewelry Company 1 on or about August 30, 2021.

5.      If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and the procedures set forth at Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON

_____
JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

_____
ALEJANDRA L. LÓPEZ
ASSISTANT UNITED STATES ATTORNEY

_____
JOHN P. TADDEI
TRIAL ATTORNEY, CRIMINAL DIVISION
DEPARTMENT OF JUSTICE

_____
YENEY HERNÁNDEZ
ASSISTANT UNITED STATES ATTORNEY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

**CASE NO.:  25-CR-20500-GAYLES/SHAW-WILDER**

v.

**CERTIFICATE OF TRIAL ATTORNEY**

SHEILA CHERFILUS-MCCORMICK, et al.,

_____/
Defendants.

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
- [✓] Miami   [ ] Key West   [ ] FTP
- [ ] FTL   [ ] WPB

I do hereby certify that:

1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.

3. Interpreter: (Yes or No) No____
   List language and/or dialect: _____

4. This case will take __30__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I   [ ]   0 to  5 days
   - II  [ ]   6 to 10 days
   - III [ ]  11 to 20 days
   - IV  [✓]  21 to 60 days
   - V   [ ]  61 days and over

   (Check only one)
   - [ ] Petty
   - [ ] Minor
   - [ ] Misdemeanor
   - [✓] Felony

6. Has this case been previously filed in this District Court? (Yes or No) No____
   If yes, Judge_____ Case No._____

7. Has a complaint been filed in this matter? (Yes or No) No____
   If yes, Judge _____ Magistrate Case No._____

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) Yes____
   If yes, Judge David S. Leibowitz_____ Case No.24-mj-6346-Leibowitz_____

9. Defendant(s) in federal custody as of _____

10. Defendant(s) in state custody as of _____

11. Rule 20 from the _____District of _____

12. Is this a potential death penalty case? (Yes or No) No____

13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No____

14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No____

15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? Yes____

16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No____

By: _____
Alejandra L. Lopez
Assistant United States Attorney
FL Bar No.          37132

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**   **SHEILA CHERFILUS-MCCORMICK**

**Case No:**

Count #:1

Conspiracy to Commit Theft of Government Funds

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment:** 5 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:** $250,000 / $100 Special Assessment

Count #:2

Theft of Government Funds

Title 18, United States Code, Section 641
* **Max. Term of Imprisonment:** 10 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:** $250,000 / $100 Special Assessment

Count #:3

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment:** 10 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:** $500,000 or Twice the Value of the Property Involved in the Transaction, whichever is Greater / $100 Special Assessment

Count #:4-11

Money Laundering

Title 18, United States Code, Section 1957
* **Max. Term of Imprisonment:** 10 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:** $250,000 or Twice the Value of the Property Involved in the Transaction, whichever is Greater / $100 Special Assessment

Count #:12

Conspiracy to Make and Receive Straw Donor Contributions

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment:** 5 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:** $250,000 / $100 Special Assessment

Count #:13

Making and Receiving Straw Donor Contributions

Title 52, United States Code, Sections 30122 & 30109(d)(1)(A)(9)(i)
* **Max. Term of Imprisonment:** 5 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:** $50,000 or 1,000 Percent the Amount of Contributions Involved / $100 Special Assessment

Count #:14

Conspiracy to Make a False and Fraudulent Statement on a Tax Return

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment:** 5 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years

**\* Mandatory Min. Term of Supervised Release:** N/A
**\* Max. Fine:** $250,000 / $100 Special Assessment

Count #:15

Aiding and Assisting a False and Fraudulent Statement on a Tax Return

Title 26, United States Code, Section 7206(2)
**\* Max. Term of Imprisonment:** 3 years
**\* Mandatory Min. Term of Imprisonment:** N/A
**\* Max. Term of Supervised Release:** 1 year
**\* Mandatory Min. Term of Supervised Release:** N/A
**\* Max. Fine:** $250,000 / $100 Special Assessment

3

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**   **EDWIN CHERFILUS**

**Case No:**

Count #:1

Conspiracy to Commit Theft of Government Funds

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment:** 5 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:** $250,000 / $100 Special Assessment

Count #:2

Theft of Government Funds

Title 18, United States Code, Section 641
* **Max. Term of Imprisonment:** 10 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:** $250,000 / $100 Special Assessment

Count #:3

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment:** 10 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:** $500,000 or Twice the Value of the Property Involved in the Transaction, whichever is Greater / $100 Special Assessment

Count #:4-11

Money Laundering

Title 18, United States Code, Section 1957
* **Max. Term of Imprisonment:** 10 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:**  $250,000 or Twice the Value of the Property Involved in the Transaction, whichever is Greater / $100 Special Assessment

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:   NADEGE LEBLANC**

**Case No:**

Count #:12

Conspiracy to Make and Receive Straw Donor Contributions

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment:** 5 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:** $250,000 / $100 Special Assessment

Count #:13

Making and Receiving Straw Donor Contributions

Title 52, United States Code, Sections 30122 & 30109(d)(1)(A)(9)(i)
* **Max. Term of Imprisonment:** 5 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:** $50,000 or 1,000 Percent the Amount of Contributions Involved / $100 Special Assessment

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**   **DAVID KOFI SPENCER**

**Case No:**

Count #:14

Conspiracy to Make a False and Fraudulent Statement on a Tax Return

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment:** 5 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:** $250,000 / $100 Special Assessment

Count #:15

Aiding and Assisting a False and Fraudulent Statement on a Tax Return

Title 26, United States Code, Section 7206(2)
* **Max. Term of Imprisonment:** 3 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 1 year
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:** $250,000 / $100 Special Assessment

Count #:16

False Statement to a Federal Agency

Title 18, United States Code, Section 1001(a)(2)
* **Max. Term of Imprisonment:** 5 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:** $250,000 / $100 Special Assessment

Count #:17

Falsification of a Record of Document

Title 18, United States Code, Section 1519

* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:** $250,000 / $100 Special Assessment